NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |
|---|---|

July 22, 2021

James S. Biear
287 Castle Terrace, Apartment 2
Lyndhurst, NJ 07071
*Pro Se Defendant*

Jonathan Fayer, Esq.
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for Plaintiff*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

   **Re:**   **United States v. James S. Biear**
             **Crim. No. 20-246 (SDW)**

Litigants:

Before this Court are Defendant James S. Biear's ("Defendant") Motion Requesting Release From Supervised Release (D.E. 3) and Motion for a Hearing on Remand and Appointment of Counsel (D.E. 18). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motions.

**DISCUSSION**

A.

Defendant "worked as a driver and personal assistant to Kenward Elmslie—a poet and heir to the Joseph Pulitzer fortune." *United States v. Biear*, Civ. No. 20-2722, 2021 WL 2453361, at *1 (3d Cir. June 16, 2021). "Over the course of two years, [Defendant] swindled Elmslie out of money, artwork, and other valuables. He then used the ill-gotten items to commit a series of duplicitous transactions." *Id*. On November 22, 2010, a jury in the United States District Court for the Southern District of New York found Defendant guilty of (1) interstate transportation of stolen property, (2) wire fraud, (3) bank fraud, (4) mail fraud, (5) access device fraud, and (6) money laundering. (D.E. 5 at 1-2.) On March 29, 2012, Judge P. Kevin Castel sentenced

Defendant to a term of 120 months' imprisonment followed by four years of supervised release. (*Id.*) Additionally, Defendant was ordered to pay $3,386,423.18 in restitution. (D.E. 7 at 1.) On August 9, 2018, Defendant began his term of supervision. (*Id.*)

On August 11, 2020, Defendant filed his pro se Motion requesting early termination of his four-year term of supervised release. (D.E. 3.) The Government opposed on August 12, 2020, (D.E. 5), and Defendant replied on August 13, 2020, (D.E. 6). The Probation Office for the District of New Jersey ("Probation Office") also filed a response on August 14, 2020, noting Defendant's compliance with the conditions of his supervised release. (*See* D.E. 7.) The Probation Office's letter contained a section which allowed this Court to mark one of two dispositions, either allowing Supervision to "end immediately," or allowing supervision to "be continued." (D.E. 7 at 2); *Biear*, 2021 WL 2453361, at *1. After considering the relevant documents, this Court concluded that supervision should not terminate early and marked the corresponding area on the Probation Office letter. (D.E. 7 at 2.)

On August 17, 2020, Defendant filed a Motion for Reconsideration, (D.E. 8), to which the Government responded on the same day, (D.E. 9). On August 20, 2020, this Court denied Defendant's reconsideration request. (D.E. 11.) Defendant then appealed, arguing that this Court did not sufficiently consider the 18 U.S.C. § 3553(a) ("Section 3553") factors. (D.E. 12; D.E. 17 at 4-5.) The United States Court of Appeals for the Third Circuit vacated and remanded the matter to this Court, directing this Court to "provide reasons for its decision." (D.E. 17 at 5.) On July 9, 2021, Defendant requested a hearing on remand and appointment of counsel. (D.E. 18.) The Government opposed that request on July 12, 2021. (D.E. 19.) On July 20, 2021, Defendant replied. (D.E. 20.)

B.

Pursuant to 18 U.S.C. § 3583(e), a defendant may request early termination of a term of supervised release. *See United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020). Prior to such a request, according to the Guide to Judiciary Policy, Vol. 8, Ch. 3, Section 360.20(c), the defendant must first satisfy the following minimum statutory factors:

> (1) The person does not meet the criteria of a career drug offender or career criminal as described in 28 U.S.C. § 994(h) or has not committed a sex offense or engaged in terrorism; (2) The person presents no identified risk of harm to the public or victims; (3) The person is free from any court-reported violations over a 12-month period; (4) The person demonstrates the ability to lawfully self-manage beyond the period of supervision; (5) The person is in substantial compliance with all conditions of supervision; and (6) The person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision.

If the defendant meets these minimum statutory factors, a district court must next consider the Section 3553 sentencing factors, which include:

>(1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018) (citing 18 U.S.C. § 3553(a)). However, the court need not "make specific findings of fact with respect to each of these factors." *Melvin*, 978 F.3d at 52-53. Instead, "a statement that [the district court] has considered the statutory factors is sufficient." *Id.* at 53 (internal quotation marks and citation omitted). Once the court has considered the Section 3553 factors, it may grant early termination if it finds that such relief is "warranted by the defendant's conduct and is in the interest of justice." *Id*. at 52 (citing 18 U.S.C. § 3583(e)(1)). Additionally, under 18 U.S.C. § 3583(e)(1), a defendant must have served at least one year of the supervised-release term for the court to grant the requested relief.

C.

Here, the applicable sentencing factors weigh against granting Defendant's request for early termination of supervision. Defendant has also only served about three years of his four-year term of supervised release. (*See* D.E. 5 at 1-2.) On April 16, 2020, Defendant was placed on a low-intensity supervision docket, which merely requires him to, on a monthly basis, submit supervision reports and pay restitution. (*Id*. at 2.) Given the low burden of complying with the terms of his supervised release, Defendant has failed to justify why the interests of justice support waiving the remaining one-year of oversight. Instead, Defendant points to various activities he took part in while incarcerated, (*see* D.E. 6 at 1-2 (discussing horticulture vocational training programs, tutoring and librarian roles, and golf course maintenance)), and references mental health concerns and the challenges of finding employment while on probation, (*id*. at 2). Defendant fails to explain how an early end to his low-burden supervision would resolve his "fear of community residents" or the "strain on [his] home life." (*Id.* at 2.) Further, as explained below, this Court cannot conclude that Defendant's employment-search challenges outweigh the Section 3553 factors that counsel in favor of serious punishment for crimes that target the elderly.

Section 3553 examines a defendant's history and characteristics, and the nature and circumstances of a defendant's offense. *See* 18 U.S.C. § 3553(a)(1). Although Defendant's offenses were non-violent, his crimes targeted a victim from a particularly vulnerable age group. (*See generally* D.E. 19.) Defendant's original sentence reflected "sentencing enhancements for

3

abusing a position of trust and a vulnerable victim."[1]  Defendant abused his elderly, mentally compromised employer's trust by engaging in a long-term, multi-million-dollar scheme to defraud him of art, money, and collectibles.  (*See* D.E. 19 at 2.)  "The evidence showed that over approximately two years, [Defendant] stole 11 items of artwork, two rare books, 93 pieces of silver and $3.2 million in cash, and that he incurred thousands of dollars in credit card debt under Elmslie's name for his own personal use.  Additional evidence showed [Defendant's] efforts to sell some of the stolen items and to deceive law enforcement and insurers about his activities." *Biear v. United States*, Crim. No. 09-1185, 2016 WL 6238614, at *1 (S.D.N.Y. Oct. 25, 2016).  At the time, Elmslie suffered from memory problems that developed into Alzheimer's disease.  *Id*.

Protecting vulnerable elderly populations is an important sentencing goal.  The vulnerable-victim enhancement is "to be applied when an extra measure of deterrence and punishment is necessary because the defendant knew of a victim's substantial inability to avoid the crime." *United States v. McCall*, 174 F.3d 47, 51 (2d Cir. 1998).  In addition to targeting an elderly victim, Defendant engaged in a pattern of fraud over the course of multiple years.  Therefore, continuing supervised release "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A); *United States v. Soto*, Crim. No. 20-585, 2020 WL 7090679, at *3 (D.N.J. Dec. 4, 2020) (denying defendant's motion where he "committed . . . fraud on the heels of engaging in another sizable fraud scheme").

Similarly, granting early termination would create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(5); *Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").  Finally, and perhaps most importantly, Defendant still has an outstanding balance of $3,004,331.65 in restitution as of July 12, 2021.  (D.E. 19 at 3.)  Thus, Section 3553(a)(6) weighs heavily in favor of Defendant continuing his term of supervised release, to ensure that Defendant continues repaying the defrauded funds.  *See* 18 U.S.C. § 3553(a)(6); *Soto*, 2020 WL 7090679, at *3 (denying defendant's motion where he "only paid a

---

[1] Federal Bureau of Investigation, *Former Caretaker of Elderly Millionaire Sentenced in Manhattan Federal Court to 10 Years in Prison for Stealing $3.2 Million and Valuable Artwork* (last accessed July 19, 2021), https://archives.fbi.gov/archives/newyork/press-releases/2012/former-caretaker-of-elderly-millionaire-sentenced-in-manhattan-federal-court-to-10-years-in-prison-for-stealing-3.2-million-and-valuable-artwork.

nominal portion towards his sizable restitution"). Therefore, this Court will deny Defendant's motion for early termination of supervised release.[2]

## **CONCLUSION**

      For the foregoing reasons, Defendant's Motion Requesting Release From Supervised Release and Motion for a Hearing on Remand and Appointment of Counsel are **DENIED**. An appropriate order follows.

                                                          /s/ Susan D. Wigenton
                                                      **SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      Parties

---

[2] This Court also denies Defendant's request for a hearing. (D.E. 18.) The relief sought is favorable to Defendant, and Defendant has not provided any new or compelling reasons for early termination that would require a hearing. *See Davies*, 746 F. App'x at 89; (D.E. 18; D.E. 20.)

Similarly, to the extent Defendant asks for the appointment of counsel, that request is also denied. "Appointment of counsel is not mandatory." *See United States v. Evans*, Crim. No. 13-173, 2020 WL 3574367, at *1 (W.D. Pa. June 30, 2020). Instead, as explained in detail in *United States v. Freed*, it is "up to the Court's discretion whether to appoint counsel." Crim. No. 11-00132, 2020 WL 5604057, at *1-2 (W.D. Pa. Sept. 18, 2020), *aff'd*, 845 F. App'x 198 (3d Cir. 2021) (citing *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993)). Here, although Defendant's claim is not wholly meritless, *see id.* (*citing Evans*, 2020 WL 3574367, at *1), the applicable discretionary factors suggest that Defendant was capable of presenting his request for early termination without counsel's input. Defendant's briefing demonstrates that he is literate and capable of clearly articulating his reasons in support of early termination. (*See* D.E. 3; D.E. 6; D.E. 20.) Defendant's request does not require additional investigation or discovery, nor is it overly complex. Importantly, appointment of counsel would not diminish the seriousness of Defendant's crimes against a vulnerable elderly victim.